# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED CANNABIS PATIENTS AND CAREGIVERS OF MAINE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MAINE DEPARTMENT OF ADMINISTRATIVE AND FINANCIAL SERVICES, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Docket No. 1:20-cv-00388-NT ) ) ) ) ) ) ) |

## ORDER ON MOTIONS TO DISMISS AND
## PLAINTIFFS' SECOND MOTION TO AMEND COMPLAINT

In this case, the Plaintiffs challenge the Maine Department of Administrative and Financial Services' (the "**Department**") decision not to enforce a statutory provision restricting adult-use marijuana licenses to businesses wholly owned by Maine residents. The Plaintiffs contend that in granting licenses to entities that do not meet the residency requirement, the Defendants—the Department and its commissioner, Kirsten Figueroa—knowingly misapplied the dormant Commerce Clause of the United States Constitution.[1] The Defendants (and several Parties-in-Interest) have moved to dismiss the Complaint (ECF Nos. 24, 29, 30). After those motions were filed, the Plaintiffs filed a motion for leave to file a second amended

---

[1] The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "Although the Clause thus speaks in terms of powers bestowed upon Congress," the Supreme Court "long has recognized that it also limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35 (1980).

complaint (ECF No. 36). For the reasons stated below, the motion to amend the Complaint is **GRANTED**, and the motions to dismiss are **GRANTED**.

## I.  MOTION TO AMEND THE COMPLAINT

A plaintiff who has already amended his or her complaint may further amend only with the written consent of the opposing party or with leave of court. *United States ex rel. Poteet v. Bahler Med., Inc.*, 619 F.3d 104, 116 (1st Cir. 2010); *see* Fed. R. Civ. P. 15(a)(1), (2). Generally, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the Federal Rules of Civil Procedure "reflect[] a liberal amendment policy . . . the district court enjoys significant latitude in deciding whether to grant leave to amend." *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 60–61 (1st Cir. 2018) (alterations in original) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008)).

The Plaintiffs filed a motion for leave to file a Second Amended Complaint ("**SAC**") on January 5, 2021, after the motions to dismiss had been filed. Pls.' Mot. for Leave to File Second Am. Compl. ("**Pls.' Mot.**") (ECF No. 36). They state that they seek to file the SAC "to cure identified defects and omissions in the [First Amended Complaint ("**FAC**")] relevant to the pending motions to dismiss for lack of federal jurisdiction and failure to state a claim." Pls.' Mot. 1–2. They maintain that the SAC "does not substantively change the nature of the claims" and that the "proposed amendments are wholly consistent with the summary and discussion of their action set forth throughout the opposition to the motions to dismiss." Pls.' Mot. 3 (quotations omitted). In their oppositions to the motion (ECF Nos. 38 and 40), the Parties-in-

2

Interest assert that amendment will be futile because the SAC fails to cure the deficiencies identified in the motions to dismiss. The Defendants have not responded to the motion.

I conclude that judicial efficiency and clarity will be aided by granting the Plaintiffs' motion. Moreover, because the amendments that the Plaintiffs seek do not substantively alter the operative complaint and because the same standard of review applies to assessing futility and the motions to dismiss, I find that granting the Plaintiffs' motion will not unduly prejudice the Defendants or the Parties-in-Interest. *See Charette v. St. John Valley Soil & Water Conservation Dist.*, Docket no. 1:17-cv-35-GZS, 2017 WL 2683951, at *1 (D. Me. June 20, 2017).

## II. MOTIONS TO DISMISS

### BACKGROUND

**A.   Adult-Use Marijuana Licensing Scheme**

In 2018, the Maine Legislature amended the Marijuana Legalization Act (the "**Act**") and created the regulatory framework for the sale of adult-use recreational marijuana in the state. SAC ¶ 23 (ECF No. 36-1). The Act states that applicants "for a license to operate a marijuana establishment must meet each of the" specified licensing criteria. 28-B M.R.S.A. § 202. One of those criteria, the "Residency Requirement," reads as follows:

> **Resident**. If the applicant is a natural person, the applicant must be a resident. If the applicant is a business entity:
>
> > A. Every officer, director, manager and general partner of the business entity must be a natural person who is a resident; and

> B. A majority of the shares, membership interests, partnership interests or other equity ownership interests as applicable to the business entity must be held or owned by natural persons who are residents or business entities whose owners are all natural persons who are residents.

28-B M.R.S.A. § 202(2). "Resident" is defined as a "natural person who . . . [i]s domiciled in this State; and . . . [m]aintains a permanent place of abode in this State and spends in the aggregate more than 183 days of the taxable year in this State." *Id.* § 102(48). The Department is tasked with implementing, administering, and enforcing the Act and adopting rules necessary to achieve that purpose. It has the "sole authority" to grant or deny applications and impose any penalty authorized under the Act. *Id.* § 104(1). Since the Act's passage, the Department has promulgated rules for the implementation of the Act, including a rule that incorporated the Residency Requirement. SAC ¶ 28.

**B.     Enforcement of the Residency Requirement and Legal Challenges**

On March 20, 2020, a non-resident corporation hoping to enter Maine's adult-use marijuana market, as well as NPG, LLC ("**NPG**")—one of the Parties-in-Interest here—filed suit in this Court, seeking a preliminary injunction against enforcement of the Residency Requirement and a declaration that the requirement violated the dormant Commerce Clause. *See NPG, LLC v. Me. Dep't of Admin. & Fin'l Servs.*, Dkt. No. 1:20-cv-00107-NT (ECF Nos. 1, 3). After reviewing relevant precedent, the Attorney General advised that the Residency Requirement was subject to significant constitutional challenges. Defs.' Mot. to Dismiss ("**Defs.' Mot.**") 4 (ECF No. 30). The Department subsequently decided that it would not enforce the requirement, and on May 11, 2020, the parties in that case agreed to a stipulation of dismissal without

prejudice. Defs.' Mot. 4. The Department also issued a public notice announcing that it would cease enforcement of the Residency Requirement. SAC ¶ 33. The Maine Legislature has not amended the Act or modified the Residency Requirement. SAC ¶ 37.

The Department subsequently revised its licensure application process and has stopped collecting certain data from applicants. SAC ¶¶ 34–35. For example, the Department eliminated forms used to ensure that applicants provided enough information to determine their residency status. SAC ¶ 35. The Department issued the first set of final, active licenses on September 8, 2020. SAC ¶ 42.

Shortly after the Department announced it was not enforcing the Residency Requirement, Plaintiffs United Cannabis Patients and Caregivers of Maine, Dawson Julia, and Christian J. Roney filed suit in Maine Superior Court. Compl. for Declaratory J. (ECF No. 24-2). They sought a declaratory judgment and an order compelling the Department to enforce the Residency Requirement and barring the Department from issuing licenses to non-residents. *See* Compl. for Declaratory J. NPG intervened to oppose the lawsuit. *United Cannabis Patients & Caregivers of Me. v. Me. Dep't of Admin. & Fin. Servs.*, No. CV-2020-73 (Me. Super. Ct. Aug. 21, 2020) (ECF No. 24-1). The Superior Court dismissed the case, concluding that the Plaintiffs lacked standing and failed to state a claim and that separation-of-powers concerns cautioned against judicial involvement. *United Cannabis Patients & Caregivers of Me. v. Me. Dep't of Admin. & Fin. Servs.*, No. CV-2020-73, at 6–10. On the last point, the Superior Court emphasized that the Legislature had directed the executive

5

branch to enforce the law and that "[a] proper respect for the roles of the three great departments of State Government counsels the court that it should not direct the Executive to enforce a law it believes cannot withstand constitutional scrutiny." *Id.* at 9. The Plaintiffs' appeal of that decision is currently pending before the Law Court. *See* Defs.' Mot. 4.

In the most recent iteration of this litigation, the Plaintiffs here—three of whom were Plaintiffs in the Superior Court case—ask me to weigh in. The Plaintiffs have also filed a parallel Complaint in Superior Court (ECF No. 24-3), which contains the same state law claims advanced here. According to NPG, that case is currently stayed. *See* NPG, LLC d/b/a Wellness Connection's Mot. to Dismiss Compl. 3 n.1 (ECF No. 24).

## C.  The Parties and the Claims

Plaintiff United Cannabis Patients and Caregivers of Maine is a marijuana business trade group that supports Maine adult-use and medical marijuana businesses through networking and advocacy. SAC ¶ 53. Plaintiffs Dawson Julia and Christian J. Roney, both Maine residents, cultivate medical marijuana and operate licensed medical marijuana storefronts as caregivers.[2] SAC ¶¶ 11–12, 55. Roney has also applied for an adult-use marijuana license from the Department. SAC ¶ 12. Plaintiff Green Cures, LLC, operates an actively licensed adult-use marijuana store in Auburn, Maine, in full compliance with the Residency Requirement. SAC ¶ 13.

---

[2]  Maine legalized the cultivation, sale, and use of marijuana for medical purposes in 2009 and authorized registered caregivers to sell marijuana to qualified patients. Defs.' Mot. to Dismiss 2-3 (ECF No. 30).

In addition to suing the Department and the Commissioner, the Plaintiffs have named seven Parties-in-Interest, which are allegedly not in compliance with the Residency Requirement. SAC ¶¶ 16–22, 86–87, 94–95, 102–03, 110–11, 118–19, 126–27, 134–35.

The Plaintiffs assert nine counts. In Count I, the Plaintiffs seek a declaratory judgment holding "that the United States Constitution's Commerce Clause (together with its negative Dormant Commerce Clause) cannot apply to any aspect of Maine's intrastate marijuana marketplace nor the state laws regulating Maine's marijuana marketplace." SAC 15. In Count IX, the Plaintiffs ask me to "enjoin Commissioner Kirsten Figueroa from issuing any adult-use marijuana license to any entity in violation [sic] based upon Ms. Figueroa's unlawful misinterpretation and misapplication of the federal Commerce Clause as declared by the Court." SAC 26. Both Count I and Count IX are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The Plaintiffs also assert several state-law claims, seeking review of the Department's issuance of licenses to each of the Parties-in-Interest. (Counts II–VIII). SAC 16–25.

The Plaintiffs allege that the Department's decision not to enforce the Residency Requirement eliminated the economic advantage that the Act was intended to provide for Maine residents and that issuing licenses to non-residents "wrongfully increas[es] economic competition to Plaintiffs' business operations from entities that the Maine Legislature expressly excluded from Maine's marijuana marketplace." SAC ¶¶ 58, 63; *see also* SAC ¶ 56 (asserting that Green Cures, which

7

is a Maine-owned company that has obtained an adult-use license, "suffers a competitive disadvantage from the Department's issuance of active marijuana establishment licenses to market competitors in violation of the Residency Requirement"). This, according to the Plaintiffs, amounts to "direct economic harms." SAC ¶ 64. The Plaintiffs state that they relied on that anticipated economic advantage in investing in their Maine marijuana businesses and in developing and tailoring their anticipated business operations. SAC ¶¶ 61–62. Finally, the Plaintiffs contend that the Department's "non-enforcement of the Residency Requirement has inflated real estate prices through increased market competition from out-of-state entities," noting that "[i]nflated commercial warehouse pricing caused Plaintiff Roney to lose a leased commercial growing warehouse" to a non-resident higher bidder. SAC ¶¶ 65–66.

NPG filed a motion to dismiss on December 1, 2020 (ECF No. 24), the other Parties-in-Interest filed a motion to dismiss on December 7, 2020 (ECF No. 29), and the Defendants moved to dismiss on December 9, 2020 (ECF No. 30). These motions raise similar arguments: (1) the Plaintiffs lack standing, (2) there is no federal-question jurisdiction, (3) Maine's sovereign immunity bars the Plaintiffs' claims, and (4) the Plaintiffs' claims are precluded by *res judicata*.

## DISCUSSION

Although the Defendants and Parties-in-Interest assert several grounds for dismissing this case, any one of which might suffice, I confine my analysis to the Eleventh Amendment's jurisdictional bar of suits against nonconsenting states by

individuals.[3] *See Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105 (1st Cir. 2015) ("Eleventh Amendment questions are often labeled jurisdictional, and generally, jurisdictional issues must be resolved before analyzing dismissals under Rule 12(b)(6)." (quotations and citations omitted)). In doing so, I take the complaint's well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 358 (D. Mass. 2016).

The Eleventh Amendment of the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Long interpreted as an affirmation of state sovereign immunity, the amendment . . . also bars a citizen from bringing a federal court action against his or her own State, including instrumentalities of the state, such as state agencies." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015) (quotations and citations omitted). This interpretation stems from the understanding that "each State is a sovereign entity in our federal system"; that " 'it is inherent in the nature of

---

[3] The First Circuit has "recognize[d] that Eleventh Amendment immunity has some attributes of subject matter jurisdiction but not others." *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 109 (1st Cir. 2007). But it has also described Eleventh Amendment immunity as jurisdictional, *see Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 105 (1st Cir. 2015), and it has held that dismissal is proper without a consideration of the case's merits where the Eleventh Amendment question is "straightforward." *Brait Builders Corp. v. Mass., Div. of Cap. Asset Mgmt.*, 644 F.3d 5, 10–12 (1st Cir. 2011). Thus, although the Defendants and Parties-in-Interest also assert that dismissal is warranted pursuant to Federal Rule of Civil Procedure 12(b)(6), *see, e.g.*, Defs.' Mot. to Dismiss 17–18 (arguing that the Plaintiffs' claims would be precluded due to *res judicata*), I do not decide those issues.

sovereignty not to be amenable to a suit' absent consent"; and that this "fundamental aspect of sovereignty constrains federal 'judicial authority.' " *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 & n.13 (1996); *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991)).

Although sovereign immunity generally bars suits against state officials as well as the state itself, "this proscription is subject to a well recognized exception memorialized in *Ex parte Young*." *Town of Barnstable*, 786 F.3d at 138 (quotations omitted) (citing 209 U.S. 123, 159–60 (1908)). This exception "permits suits to proceed against state officers in their official capacities to compel them to comply with federal law." *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 477–78 (1st Cir. 2009); *see also Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 (1st Cir. 2005) (stating that the exception also permits injunctive relief against state defendants in their individual capacities). It is premised on the notion "that, since a state could not authorize an official to violate federal law, by doing so, a state official is stripped of her authority and thus a suit against her does not implicate the state's sovereign immunity." *Irizarry*, 587 F.3d at 478 (citing *Ex parte Young*, 209 U.S. at 159–60); *see also Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (explaining that a state official who enforces an "unconstitutional legislative enactment . . . comes into conflict with the superior authority of the Constitution," and thus "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes" (quotations omitted)).

10

### A.     Claims Against the Department

The Defendants and the Parties-in-Interest argue that the claims against the Department are barred by the Eleventh Amendment. The Defendants note that "the Department is plainly the type of agency that qualifies as an arm of the state for purposes of sovereign immunity" and that "Maine scrupulously guards its Eleventh Amendment sovereign immunity rights." Defs.' Mot. 8 (citing 14 M.R.S. § 8118 ("Nothing in this chapter or any other provision of state law shall be construed to waive the rights and protections of the State under the Eleventh Amendment of the United States Constitution, except where such waiver is *explicitly stated* by law . . . ." (emphasis in quotation))).

By statute, the Department "is established as the principal fiscal department of State Government." 5 M.R.S.A. § 281. It is responsible for "coordinat[ing] financial planning and programming activities of departments and agencies of the State Government for review and action." *Id.* Like other Maine agencies, the Department is not "independent and separate," but rather is an arm of the State shielded by the Eleventh Amendment from suit in federal court. *See Abdisamad v. City of Lewiston*, No. 2:19-CV-00175-LEW, 2019 WL 2552194, at *2 (D. Me. June 20, 2019) (quoting *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp.*, 322 F.3d 56, 63 (1st Cir. 2003)) (holding that the Maine Department of Agriculture, Conservation and Forestry is an arm of the state). In their

11

Opposition to the Motions to Dismiss, the Plaintiffs make no argument that the Department should be characterized differently.[4]

Nor do the Plaintiffs attempt to demonstrate that the State has consented to suit for any of the claims they advance or that the State's sovereign immunity has otherwise been abrogated.[5] *See Tierney v. Town of Framingham*, 292 F. Supp. 3d 534, 542 (D. Mass. 2018) ("Plaintiffs bear the 'burden of proving [that] sovereign immunity has been waived.'") (alteration in original) (quoting *Mahon v. United States*, 742 F.3d 11, 14 (1st Cir. 2014))). Thus, I conclude that the claims brought directly against the Department are barred.

## B. Claims Against Commissioner Figueroa

Typically, "[a] lawsuit against a state official in [her] official capacity is a lawsuit against the State, and is prohibited in federal court by the Eleventh Amendment." *Nillson-Borrill v. Burnheimer*, 505 F. Supp. 2d 180, 181 (D. Me. 2007) (citing *Pennhurst*, 465 U.S. at 99–100). In response to the Defendants' Eleventh Amendment argument, the Plaintiffs rely exclusively on the *Ex parte Young* exception

---

[4] At one point, the Plaintiffs appear to suggest that the *Ex parte Young* exception would authorize their suit of the Department. *See* Pls.' Opp'n to Parties-in-Interest and Defs.' Mots. to Dismiss ("**Pls.' Opp'n**") 4 (ECF No. 33) ("Plaintiffs allege that Commissioner Figueroa and the *Department* are engaged in ongoing conduct . . . ." (emphasis added)). But this undeveloped argument is contrary to the holding of *Ex parte Young* and the express language of subsequent cases, which have emphasized that state agencies are immune from suit. *See Ex parte Young*, 209 U.S. 123, 151, 159–60 (1908); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) (explaining that Eleventh Amendment bars suits against states and state agencies "regardless of the nature of the relief sought"); *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies . . . .").

[5] There is no express language in the Declaratory Judgment Act that abrogates state sovereign immunity. *See Philadelphia Indem. Ins. Co. v. Goff*, Civil Action No. 10-10224-GAO, 2010 WL 2204828, at *1 (D. Mass. May 27, 2010); *MA LEG Partners 1 v. City of Dallas*, 442 F. Supp. 3d 958, 970 & n.37 (N.D. Tex. 2020); *Wise v. Michigan*, No. 10-CV-11438, 2011 WL 4469151, at *1 (E.D. Mich. Sept. 27, 2011).

to state sovereign immunity to justify their claims against Commissioner Figueroa.[6] Pls.' Opp'n to Parties-in-Interest and Defs.' Mots. to Dismiss ("**Pls.' Opp'n**") 3–6 (ECF No. 33). In Counts I and IX—the two claims brought pursuant to the federal Declaratory Judgment Act—the Plaintiffs seek a declaratory judgment that the Residency Requirement does not violate the dormant Commerce Clause and an injunction preventing Commissioner Figueroa "from issuing any adult-use marijuana license to any entity . . . based upon [her] unlawful misinterpretation and misapplication of the federal Commerce Clause." SAC 15, 26.

As the Plaintiffs acknowledge, "[t]o determine applicability of the *Ex parte Young* exception, 'a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Pls.' Opp'n 4 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). No such violation of federal law is alleged here. The SAC alleges that Commissioner Figueroa is engaged in ongoing conduct— the knowing misinterpretation and misapplication of the federal Constitution's Commerce Clause—that fails "to conform . . . to the requirements of federal law." Pls.'

---

[6] The Amended Complaint ("**FAC**") explicitly stated that Commissioner Figueroa was being sued in her "official capacity," but the Plaintiffs deleted that language in the SAC, replacing it with the statement that Commissioner Figueroa is "individually responsible for all acts of the Department undertaken in excess of her of [sic] the Department's lawful authority to act as a representative of the state of Maine." *Compare* FAC at 1 & ¶ 15 (ECF No. 11), *with* SAC at 1 & ¶ 15. Despite this confusing alteration, the case caption in the SAC still identifies Defendant Figueroa as "KIRSTEN FIGUEROA, as Commissioner," and the Plaintiffs still seek relief that Commissioner Figueroa can only satisfy by acting in her official capacity, *see* SAC 26 (seeking to enjoin how Commissioner Figueroa grants licenses, one of her official duties). Moreover, the Plaintiffs state that the SAC "does not substantively change the nature of the claims," Pls.' Mot. for Leave to File Second Am. Compl. 3 (quotations omitted) (ECF No. 36), and they make no mention of altering the nature of the suit against Commissioner Figueroa in their motion. Thus, I conclude that these claims are still brought against Commissioner Figueroa in her official capacity.

Opp'n 3–4 (emphasis deleted) (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979)). But, as is clear from the SAC, the crux of the Plaintiffs' claims is that the Commissioner did not enforce the state Residency Requirement when issuing licenses. *See* SAC ¶ 1 (alleging that there has been a "violation of Maine's Residency Requirement for licensure"), 43 (alleging that Commissioner Figueroa "violated the Act and its rules when [she] issued active licenses by failing to consider whether applicants complied with the Residency Requirement"); SAC ¶ 141 (asserting that certain licenses were "issued in knowing violation of Maine law"). Thus, the true conduct that the Plaintiffs challenge—the decision not to enforce the Residency Requirement and to award licenses to non-residents—can at most be characterized as violations of state law.

To be sure, the Plaintiffs attempt to disguise these state law grievances as federal law claims. The SAC asserts that Commissioner Figueroa's "violation of her statutory obligations is predicated on her ongoing misinterpretation and misapplication of the federal Constitution's Commerce Clause." SAC ¶ 38; *see also* SAC ¶ 1 (claiming that Commissioner Figueroa is issuing licenses based on an "unlawful interpretation and application of the federal Commerce Clause"); SAC ¶ 140 ("The Department and Commissioner Kirsten Figueroa should be enjoined to conform their conduct—the interpretation and application of the federal Commerce Clause—with the requirements of federal law."). But despite this crafty language, the Plaintiffs point to no actual conduct that can be read as an alleged violation of federal law. The Commerce Clause simply grants Congress the power to regulate interstate

14

and foreign commerce, and the dormant Commerce Clause, by implication, "limits the power of the States to erect barriers against interstate trade." *Lewis v. BT Inv. Managers, Inc.,* 447 U.S. 27, 35 (1980). Here, Commissioner Figueroa has refused to apply a state Residency Requirement that is arguably itself a barrier against interstate trade. There is no actual allegation in either the FAC or SAC that Commissioner Figueroa has *violated* the dormant Commerce Clause, and she is not alleged to have erected any barriers against interstate trade. Rather, the Plaintiffs only allege that she has misinterpreted the dormant Commerce Clause's requirements in a way that favors interstate trade. The Plaintiffs' challenge of her alleged action—whether that action is required by the dormant Commerce Clause or not—cannot seriously be considered an allegation of a violation of federal law.

The Plaintiffs are quick to point out that an analysis of the merits of Plaintiffs' federal claims should not be undertaken during this stage of the Court's jurisdictional review. Pls.' Opp'n 4–5. But this misses the point. I am not assessing the merits of whether the Residency Requirement actually does run afoul of the dormant Commerce Clause. My decision that there is no federal jurisdiction rests on the fact that the Plaintiffs—even in their SAC—have not *alleged* an ongoing violation of *federal* law.[7]

---

[7]     In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, the Supreme Court held that the *Ex parte Young* doctrine permitted a suit to proceed even though the Court of Appeals suggested that the state's action was "probably not inconsistent with federal law." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002) (emphasis deleted). The Court explained that "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) ("An *allegation* of an ongoing violation of federal law . . . is ordinarily sufficient." (emphasis added in quotation))). But the issue here is not that the Plaintiffs have failed to prove that there was a violation of federal law, or

In failing to allege that the Commissioner is violating federal law, the Plaintiffs have failed to bring themselves within the *Ex parte Young* exception to state sovereign immunity. *See Pennhurst*, 465 U.S. at 106 (explaining that the justification for the *Ex parte Young* exception is to "vindicate the supreme authority of federal law" and that the "entire basis for the doctrine of *Young* . . . disappears" when "a plaintiff alleges that a state official has violated *state* law"); *Booth v. Maryland*, 112 F.3d 139, 142–43 (4th Cir. 1997) ("To have a state sued in federal court without even a contention of an ongoing violation of federal law would only multiply the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." (internal quotations omitted)); *Town of Barnstable*, 786 F.3d at 138 ("A 'pivotal question' under *Ex parte Young* is whether the relief 'serves directly to bring an end to a present violation of federal law.' " (quoting *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005))). Thus, Counts I and IX are barred.

Generally, "the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." *Lambert v. Fiorentini*, 949 F.3d 22, 29 (1st Cir. 2020) (alteration in original) (quoting *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995)). While district courts may retain jurisdiction over the remaining claims if the "interests of fairness, judicial economy, convenience, and comity" so warrant, they should not "retain jurisdiction over a pendent state law claim when

---

that their argument that the Residency Requirement is consistent with the dormant Commerce Clause may fail. Rather, the issue is that the Plaintiffs fail to *allege* a violation of federal law.

that state law claim presents a substantial question of state law that is better addressed by the state courts." *Id.* (quoting *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998); *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017)). "Needless decisions of state law should be avoided," *id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)), and caution is especially warranted when the remaining claims raise "novel or sensitive" state law issues," *see id.* (quotations omitted); 28 U.S.C. § 1367(c)(1).

In Counts II through VIII, the Plaintiffs ask me to vacate the issuance of adult-use marijuana licenses to the Parties-in-Interest. Because I have dismissed Counts I and IX and because the remaining state claims involve thorny questions about the separation of powers within the State, I decline to exercise jurisdiction over them.[8]

---

[8]  There are additional reasons why these state law claims do not belong in federal court. First, Maine law specifies that challenges to final agency action are to be brought in Superior Court, *see* 5 M.R.S.A. §§ 11001, 11002, and Maine has not waived its sovereign immunity for such suits in federal court, *see Abdisamad v. City of Lewiston*, No. 2:19-CV-00175-LEW, 2019 WL 2552194, at *2 (D. Me. June 20, 2019) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts.").

Second, these claims ask a federal court to compel a state official to comply with state law, relief that is barred by sovereign immunity. *See Perry v. Treseler*, No. 3:18-CV-30194-KAR, 2020 WL 1877877, at *11 (D. Mass. Apr. 15, 2020) ("[T]he Eleventh Amendment bars Plaintiff from seeking injunctive relief to force Defendant to comply with a state law."); *Pennhurst*, 465 U.S. at 119–121 (holding that this rule applies to state law claims brought into federal court through pendent jurisdiction). More fundamentally, any argument that Commissioner Figueroa acted beyond her authority would raise state constitutional issues that are not appropriately resolved by a federal court. *See ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 24 (D. Mass. 2020) ("[I]t is not for a federal court to police the boundaries of a state constitution for violations by its officials."). And it seems especially inappropriate for a federal court to police such boundaries after a state court declined to do so in part because of its own separation-of-powers concerns. *See United Cannabis Patients & Caregivers of Me. v. Me. Dep't of Admin. & Fin. Servs.*, No. CV-2020-73, at 9 (Me. Super. Ct. Aug. 21, 2020) (ECF No. 24-1) ("[I]t would not be appropriate for the court to intrude upon the prerogative of the Executive to exercise its judgment as to whether a statute should be enforced, notwithstanding the existence of serious concerns about its constitutional legality.").

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for leave to file a second amended complaint (ECF No. 36), and **GRANTS** the motions to dismiss all claims (ECF Nos. 24, 29, 30).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 22nd day of April, 2021.